UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOY BARONE, CHRISTINE CARNEY, JASON JOHANNING, JARRETT REICH, and TAWHID ALI,<br><br>Plaintiffs,<br><br>-against-<br><br>INSPIRE SUMMITS LLC d/b/a SKYTOP STRATEGIES, and CHRISTOPHER SKROUPA,<br><br>Defendants. | <u>**COMPLAINT**</u><br><br>**Docket No.:**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Joy Barone ("Barone"), Christine Carney ("Carney"), Jason Johanning ("Johanning"), Jarrett Reich ("Reich"), and Tawhid Ali ("Ali") (collectively, the "Plaintiffs"), by and through their attorneys, Stevenson Marino LLP, file this Complaint against the Defendants Inspire Summits LLC d/b/a Skytop Strategies ("Skytop"), Christopher Skroupa ("Skroupa") (together, the "Defendants"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") NYLL Article 6, §§ 190 *et seq.*, 650 et seq., and common law claims consisting of fraud, promissory estoppel, and breach of covenant of good faith and fair dealing. The following allegations are based upon knowledge unless noted as being based upon information and belief:

## **INTRODUCTION**

1. Plaintiffs are all former employees of Defendants, all of whom Defendants terminated on or about September 28, 2020, and refused to pay Plaintiffs their wages owed over a six-week period. As described below, Defendants' failure to pay Plaintiffs their wages violates the

prompt payment requirement of the FLSA and the NYLL's requirement for employers to pay their employees in a timely manner according to the terms and conditions of their employment.

2.      Additionally, Defendants' inducement of Plaintiffs Barone, Carney, Johanning, and Ali to accept positions with Skytop by offering them employment contracts that included things such as: (1) C-suite titles or senior executive titles; (2) competitive base salaries and commission packages; (3) guarantees of increased salaries for calendar 2021; (4) promises of annual bonuses; (5) ERISA benefit plans that included health, life, and disability insurance from day one; and/or (6) future equity compensation packages, represented a fraudulent inducement as Plaintiffs Barone, Carney, Johanning, and Ali relied on Defendants' representations, which Defendants knew at the time to be false.

3.      Defendants' promise and subsequent agreement of employment, which Defendants knew at the time to be made without the means to comply with, caused Plaintiff Barone to suffer damages sounding in promissory estoppel and Plaintiffs breach of the covenant of good faith and fair dealing.

4.      Lastly, Defendants' offer and subsequent agreement of employment through the end of the year to Plaintiffs Barone, Carney, Johanning, and Ali, which Defendants knew at the time made, or should have known, that it was without the means to comply with, constituted a breach of the covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.*, and 29 U.S.C. § 1001. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) as all Defendants are residents of the State of New York and Defendant Skroupa resides in Astoria, New York, and thus resides within this District.

## PARTIES

*Defendants*

7. At all relevant times herein, Defendant Skroupa is the founder, principal, and CEO of Defendant Inspire Summits LLC, a New York domestic limited liability company with its principal place of business located in the County of New York at 475 Park Avenue South, Suite 920, New York, New York 10016. In his role, Defendant Skroupa oversaw Skytop's operations, paid employees, and had the power to hire and fire and approve all personnel decisions with respect to all of Skytop's employees, including all Plaintiffs. In fact, Defendant Skroupa hired and fired all Plaintiffs, supervised Plaintiffs' job duties, and was responsible for paying Plaintiffs.

8. At all relevant times herein, Defendant Inspire Summits LLC d/b/a Skytop Strategies ("Skytop") is a domestic business corporation organized and existing by virtue of the laws of the State of New York.

9. At all relevant times herein, Defendant Skytop has a principal place of business at 475 Park Avenue South, Suite 902, New York, New York 10016.

10. At all relevant times herein, Skytop holds itself out as being an organizer of conferences for business and legal professionals.

11. At all relevant times herein, Defendant Skytop had annual gross revenues in excess of $500,000 per year for all relevant periods herein.

12. At all relevant times herein, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning

of FLSA 29 U.S.C. §§ 206(a) and 207(a), as Defendants transact business across state lines, by organizing and holding conferences in various states and countries such as the following upcoming conferences: (1) Shareholder Activism Summit scheduled for January 28, 2021 in New York, New York; (2) Shareholder Engagement & Communication scheduled for March 3, 2021 in London, United Kingdom; and (3) Gender Equality in the C-Suite & Boardroom scheduled for March 8 – March 9, 2021, in Chicago, Illinois.

13. Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed the Plaintiffs.

*Plaintiffs*

14. At all relevant times herein, Plaintiffs are each considered a "person" and an "employee" entitled to protection as defined by the FLSA and NYLL.

15. Plaintiff Barone began working for Defendants on or about August 3, 2020 and was given the title of Chief Marketing Officer.

16. Plaintiff Carney began working for Defendants on or about July 6, 2020 with the title of Chief Communications Officer.

17. Plaintiff Johanning began working for Defendants on or about August 3, 2020 and was given the title of Managing Director, Business Development & Partnership Engagement.

18. Plaintiff Reich began working for Defendants in or around October of 2017 as Vice President of Sponsorship Engagement. On or about July 6, 2020, Reich was promoted to Chief Operations Officer.

19. Plaintiff Ali began working for Defendants on or about July 6, 2020 and was given the title Web Developer.

## FACTUAL BACKGROUND

20. Skroupa founded Skytop in 2014.

21. Inspire Summits LLC does business as Skytop, a for-profit domestic limited liability company that operates conferences aimed at legal professionals and business executives.

22. Skytop generates revenue by charging both the attendees and the corporate sponsors of these conferences.

23. According to two other lawsuits filed -- *Moody v. Inspire Summit LLC et al.* 20-cv-05834 (S.D.N.Y. July 27, 2020) and *Barlow et al v. Skroupa et al*, Civ. Ind.: 651739/2020 (NY Sup. Ct. NY Cty, July 8 2020) – since at least 2018, Skroupa and Skytop have routinely engaged in a practice of hiring employees and/or entering into agreements with independent contractors and subsequently refusing to pay them their wages and/or compensation earned.

24. In or around June of 2020, Skroupa began recruiting Barone, Carney, Johanning, and Ali to join Skytop.

25. Skroupa advised Barone, Carney, Johanning and Ali that despite the general economic downturn due to Covid-19, Skytop was poised for growth as it was in a strong financial position.

26. Skroupa advised Barone, Carney, and Johanning that he was searching for leadership positions to help grow the business.

*Plaintiff Barone*

27. Barone knew Skroupa through a working relationship between Skytop, and Acuris, a financial media company where Barone was employed.

28. In or around January of 2020, Skroupa first suggested to Barone that she should consider leaving Acuris and joining Skytop.

29. In or around May of 2020, Barone was gainfully employed at Acuris as the Head of Marketing and Public Relations, Americas. Barone had been employed at Acuris since 2013.

30. In or around May of 2020, Skroupa began to heavily recruit Barone to leave Acuris and join Skytop.

31. In attempting to persuade Barone to join Skytop, Skroupa repeatedly advised that Skytop was in a strong financial position and was "fully funded" such that it could survive through the end of the calendar year without revenue.

32. On June 10, 2020, Defendants issued Barone an offer letter for the position of Chief Marketing Officer.

33. According to Barone's offer letter, Barone's start date would be August 3, 2020, and her compensation for the remainder of calendar year 2020 would include the following:

    a. "Base salary of $8,328.57 [monthly]";

    b. "Bonus of $1,280 gross every two months beginning July and to be paid on the 15th of September, November, and January";

    c. "Total compensation for this period is $53, 811.42";

    d. "Health Insurance, day one along with life, disability";

    e. "401k, no match not until 2021";

    f. "Stock Plan (awaiting need valuation of company and attorney guidance on how best to implement)."

34. For calendar year 2021, Barone's compensation included the following:

    a. "Base starts at a minimum of $140,000"

    b. "Quarterly bonuses defined by experiential KPIs"

   c. "Total income to be $150k or over, depending upon performance and the attainment of KPIs"

   d. "CEO discretionary bonus potential";

   e. "Phantom stock with 5-year vesting that begins after one year. If you resign or terminate service you will forfeit this benefit."

35. In reliance upon Defendants' offer of employment, Barone resigned from her position with Acuris and accepted the position with Skytop.

36. Barone began working for Skytop on August 3, 2020.

37. Defendants paid Barone a single paycheck on August 16, 2020, which is the final paycheck that Defendants paid to Barone.

38. Defendants advised Barone that there was an administrative error and she would receive a double paycheck the following pay period.

39. Barone worked in this position performing her job duties and responsibilities as per Defendants' direction until September 25, 2020.

40. On or about September 28, 2020, Defendants issued a generic termination letter to Barone stating that "due to the COVID-19 (coronavirus) pandemic, it has become necessary to reduce its workforce." The termination letter further advised that Barone's last day of employment was September 25, 2020.

41. The termination letter acknowledged that Barone was owed funds and advised that Defendants would revert with Barone's final paycheck.

42. Defendant Skroupa has repeatedly acknowledged to Barone that he owes her wages for her work performed subsequent to her August 16, 2020 paycheck, but to date has refused to pay Barone those wages.

43. Skroupa additionally failed to pay Barone her bonus due to her on September 15, 2020.

*Plaintiff Carney*

44. Carney also previously worked at Acuris as Director of Global Public Relations.

45. Carney, like Barone, knew Skroupa through a working relationship between Acuris and Skytop.

46. Skroupa began attempting to recruit Carney to join Skytop in June of 2020.

47. In attempting to recruit Carney to join Skytop, Skroupa repeatedly advised that Skytop was in a strong financial position and could survive through the end of the calendar year without revenue.

48. On June 9, 2020, Defendants issued Carney an offer letter for the position of Chief Communications Officer.

49. According to Carney's offer letter, Carney's start date would be July 6, 2020, and her compensation for the remainder of calendar year 2020 would include the following:

    a. "Base salary of $8,328.57 [monthly]";

    b. "Bonus of $1,280 gross every two months beginning July and to be paid on the 15th of September, November, and January";

    c. "Total compensation for this period is $53, 811.42";

    d. "Health Insurance, day one along with life, disability";

    e. "401k, no match not until 2021'"

    f. "Stock Plan (awaiting need valuation of company and attorney guidance on how best to implement)."

50. For calendar year 2021, Carney's compensation included the following:

      a.    "Base up to a minimum of $130,000"

      b.    "Quarterly bonuses defined by experiential KPIs"

      c.    "Total income to be $150k or over, depending upon performance and the attainment of KPIs"

      d.    "CEO discretionary bonus potential"

      e.    "Phantom stock with 5-year vesting. If you resign or terminate service you will forfeit this benefit."

51. Carney began working for Skytop on July 6, 2020.

52. Defendants paid Carney for her first three pay-periods, with the last paycheck being paid on August 16, 2020.

53. Defendants advised Carney that there was an administrative error and she would receive a double paycheck the following pay period.

54. On or about September 16, 2020, Carney learned that Skytop lacked the funding to pay salaries but was purportedly awaiting funding from an investment partner.

55. Carney worked in this position performing her job duties and responsibilities as per Defendants' direction until September 25, 2020.

56. On or about September 28, 2020, Defendants issued a generic termination letter to Carney stating that "due to the COVID-19 (coronavirus) pandemic, it has become necessary to reduce its workforce." The termination letter further advised that Carney's last day of employment was September 25, 2020.

57. The termination letter acknowledged that Carney was owed funds and advised that Defendants would revert with Carney's final paycheck.

58. Skroupa has repeatedly acknowledged to Carney that he owes her wages for her work performed subsequent to her August 16, 2020 paycheck, but to date has refused to pay Carney those wages.

59. Skroupa additionally failed to pay Carney her bonus due to her on September 15, 2020.

*Plaintiff Johanning*

60. In or around June 2020, Skroupa began attempting to recruit Johanning to join Skytop.

61. In attempting to recruit Johanning to join Skytop, Skroupa repeatedly advised that Skytop was in a strong financial position and could survive through the end of the year without revenue.

62. On July 8, 2020, Defendants issued Johanning an offer letter for the position of Managing Director, Business Development & Partnership Engagement.

63. According to Johanning's offer letter, Johanning's start date would be August 3, 2020, and his compensation for the remainder of calendar year 2020 would include the following:

    a. "Base salary of $150,000 annually";

    b. "You will receive commission on all new sales (inclusive of new and existing partners), according to the standard commission schedule. Presently, 6% up to $30,000, 8% up to $40,000 and 10% over $40,000.";

    c. "In addition, you will be paid a 2% sales overrise on all Sales generated by the partnership sales team";

    d. "Health Insurance, day one along with dental, life, and disability for you as an individual";

   e. "401k, no match not until 2021";

   f. "Stock Plan (awaiting need valuation of company and attorney guidance on how best to implement)";

   g. "Base salary to be renegotiated in January 2021."

64. Johanning accepted the offer of employment.

65. Johanning began working for Skytop on August 3, 2020.

66. Defendants paid Johanning a single paycheck on August 16, 2020, which is the last paycheck that Defendants paid to Johanning.

67. Defendants advised Johanning that there was an administrative error and he would receive a double paycheck the following pay period.

68. Johanning worked in this position performing his job duties and responsibilities as per Defendants' direction until about September 25, 2020.

69. On or about September 28, 2020, Defendants issued a generic termination letter to Johanning stating that "due to the COVID-19 (coronavirus) pandemic, it has become necessary to reduce its workforce." The termination letter further advised that Johanning's last day of employment was September 25, 2020.

70. Following receipt of the termination letter, Johanning had a telephone call with Skroupa and requested that Skroupa revise the termination letter to specifically identify the amount owed to Johanning and the date in which it would be paid.

71. Following the call, Skroupa revised the termination letter to acknowledge that Johanning was owed for three pay periods for a total amount of $17,307.69. The letter further stated that the owed wages would be paid no later than October 9, 2020 by way of direct deposit.

As of the date of the filing of the present action, Defendants failed to pay Johanning the wages that Defendants owe him.

72. Skroupa has repeatedly acknowledged to Johanning that he owes him wages for his work performed subsequent to his August 16, 2020 paycheck, but to date has refused to pay Johanning those wages.

73. Upon information and belief, since Johanning's wrongful termination, several of Johanning's deals have closed and Skytop has been paid on those deals, yet Defendants have refused to pay Johanning the commission owed on those sales.

*Plaintiff Jarrett Reich*

74. Reich began working at Skytop in October of 2017 as Vice President of Sponsorship Engagement.

75. In or around June of 2020, Defendants issued Reich an offer letter for a promotion to the position of Chief Operations Officer.

76. According to Reich's offer letter, Reich's start date of his new position would be July 6, 2020, and his compensation for the remainder of calendar year 2020 would include the following:

    a. "Base salary of $95000 annually";

    b. "Health Insurance, day one along with life, disability";

    c. "401k, no match not until 2021";

    d. "Stock Plan (awaiting need valuation of company and attorney guidance on how best to implement)."

77. For calendar year 2021, Reich's compensation included the following:

    a. "Base starting at a minimum of $130,000";

   b. "Quarterly bonuses defined by experiential KPIs";

   c. "Total income to be $150k or over, depending upon performance and the attainment of KPIs";

   d. "CEO discretionary bonus potential";

   e. "Phantom stock with 5-year vesting that begins after one year. If you resign or terminate service you will forfeit this benefit."

78. Reich began working in his new role of Chief Operations Officer on July 6, 2020.

79. Defendants paid Reich for three pay-periods at his increased salary, with his last paycheck being paid on August 16, 2020.

80. Defendants advised Reich that there was an administrative error and that as a result, he would receive a double paycheck the following pay period.

81. Reich worked in this position performing his job duties and responsibilities as per Defendants' direction until September 25, 2020.

82. On or about September 28, 2020, Defendants issued a generic termination letter to Reich stating that "due to the COVID-19 (coronavirus) pandemic, it has become necessary to reduce its workforce." The termination letter further advised that Reich's last day of employment was September 25, 2020.

83. The termination letter acknowledged that Reich was owed funds and advised that Defendants would revert with Reich's final paycheck.

84. Skroupa has repeatedly acknowledged to Reich that he owes him wages for his work performed subsequent to his August 16, 2020 paycheck, but to date has refused to pay Reich those wages.

*Plaintiff Tawhid Ali*

85. On July 1, 2020, Defendants issued Ali an offer letter for the position of Web Developer.

86. According to Ali's offer letter, Ali's compensation would be $75,000 annually.

87. Ali accepted the offer and began employment with Skytop in the position of Web Developer on July 6, 2020.

88. Defendants paid Ali for three pay periods with the last paycheck being paid on August 16, 2020.

89. Defendants advised Ali that there was an administrative error and that as a result, he would receive a double paycheck the following pay period.

90. Ali worked in this position performing his job duties and responsibilities as per Defendants' direction until September 25, 2020.

91. On or about September 28, 2020, Defendants issued a generic termination letter to Ali stating that "due to the COVID-19 (coronavirus) pandemic, it has become necessary to reduce its workforce." The termination letter further advised that Ali's last day of employment was September 25, 2020.

92. The termination letter acknowledged that Ali was owed funds and advised that Defendants would revert with Ali's final paycheck.

93. Skroupa has repeatedly acknowledged to Ali that he owes him wages for his work performed subsequent to his August 16, 2020 paycheck, but to date has refused to pay Ali those wages.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Promptly Pay Wages Under the FLSA*

94. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

95. 29 U.S.C. 206(a) requires that employers promptly pay their employees. *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (noting that "courts have long interpreted the [FLSA] to include a prompt payment requirement" that "requires wages to be paid in a timely fashion").

96. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiffs are employees within the meaning of the FLSA.

97. As also described above, Defendants and Plaintiffs had an agreement to pay Plaintiffs' wages according to a well-established schedule, Defendants missed payments on multiple occasions without any legitimate business reason causing unreasonable delay in the payment of Plaintiffs' wages and thus failed to Plaintiffs their wages in a timely fashion.

98. Plaintiffs are entitled to be paid in a timely fashion and Defendants are required to promptly pay Plaintiffs their wages.

99. Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the FLSA's provisions.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Timely Wages in Under the NYLL*

100. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

101. NYLL § 191(d) provides that a worker shall be paid the wages earned in accordance with the agreed-upon terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

102. NYLL § 198(1-a) provides that "in any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the [CPLR], and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due."

103. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiffs are employees within the meaning of the NYLL.

104. As also described above, Defendants and Plaintiffs had an agreement to pay Plaintiffs wages according to established terms between the parties and Defendants failed to pay Plaintiffs according to these terms.

105. Plaintiffs are entitled to their wages in accordance with the agreed-upon terms of their employment.

106. Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's provisions.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

107. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

108. NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

109. As described above, Defendants, on each payday, failed to furnish Plaintiffs with accurate wage statements containing the criteria required under the NYLL.

110. On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs in the amount of $250 for each workweek after the violation occurred, up to a statutory cap of $5,000.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Fraud*
*(On behalf of Plaintiffs Barone, Carney, Johanning, and Ali)*

111. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

112. Defendant Skroupa made several misrepresentations to Plaintiffs that were material and that Plaintiffs reasonably relied upon.

113. Specifically, Defendant Skroupa advised each Plaintiff that despite the economic downturn due to Covid-19, Skytop was fully funded and could afford to pay all of its obligations, including Plaintiffs' salaries, through the end of calendar year 2020.

114. Such statement was false at the time it was made, and Defendant Skroupa knew it was false because he was the CEO of Skytop and knew it had not yet been fully funded.

115. Skroupa made such false statements for the sole purpose to induce Plaintiffs to rely upon such representations in the decision-making process of each Plaintiff as to whether to accept a position with Skytop.

116. Plaintiffs' reliance upon the materially false statement was reasonable because Skroupa was the founder and CEO of Skytop and, as such, was at all times fully aware of the financial standing of the company.

117. As a direct result of Defendants' material misrepresentations, Plaintiffs suffered damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Detrimental Reliance/Promissory Estoppel*
*(On behalf of Plaintiff Barone)*

118. Plaintiff Barone repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119. Defendants made a clear and unambiguous promise to allow Plaintiff Barone to be employed at least through the end of calendar year 2020.

120. Plaintiff Barone reasonably and foreseeably relied upon such promise when she resigned from her position at Acuris to accept the position with Defendants.

121. As a result of Plaintiff Barone's reliance upon Defendant's promise, Barone suffered actual damages constituting the wages she would have received from Acuris had she not resigned.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Breach of Implied Covenant of Good Faith and Fair Dealing*
*(On behalf of Plaintiffs Barone, Carney, Johanning, and Ali)*

122. Plaintiffs Barone, Carney, Johanning, and Ali repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

123. Defendants entered in an agreement with Plaintiffs Barone, Carney, Johanning, and Ali for them to be employed by Skytop at least through the end of calendar year 2020.

124. In reliance upon that agreement, Plaintiffs resigned from other positions and/or stopped seeking other employment.

125. Almost immediately after Plaintiffs Barone, Carney, Johanning, and Ali accepted their respective positions with Skytop, Defendants stopped paying Plaintiff Barone, Carney, Johanning and Ali and did not permit them to work through the end of calendar year 2020.

126. As a result of the Skytop Defendant's breach of the covenant of good faith and fair dealing, Plaintiffs Barone, Carney, Johanning and Ali suffered actual damages constituting the wages they would have received, had they been permitted to work through the end of calendar year 2020.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, are entitled to and pray for the following relief:

a. A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An award of unpaid wages that Plaintiffs have sustained as a result of Defendants' conduct and unlawful payment practice;

d. An award of liquidated damages as a result of Defendants' willful failure to promptly compensate Plaintiffs;

e. Penalties under NYLL §§ 198(1)(b) and 198(1)(d) for the Defendant's failure to comply with the notice and record keeping requirements of NYLL §§ 195(1) and 195(3);

f.

  g. An award of damages for breach of contract and/or fraud in amount equal to the wages Plaintiffs would have received for the remainder of calendar year 2020;

  h. An equal amount of liquidated damages under Plaintiffs' fraud claims;

  i. An award of pre-judgment and post-judgment interest;

  j. An award of costs and expenses of this action together with reasonable attorneys' and expert fees and an award of service payments to Plaintiffs; and

  k. Granting Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
   December 8, 2020

                Respectfully submitted,

                Stevenson Marino LLP
                75 Maiden Lane, Suite 402
                New York, New York 10038
                Tel: (212) 939-7228
                Fax: (212) 531-6129

          By: _____
             Jeffrey R. Maguire, Esq.