UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOY BARONE, CHRISTINE CARNEY, JASON JOHANNING, JARRETT REICH, and TAWHID ALI,<br><br>Plaintiffs,<br><br>- against -<br><br>INSPIRE SUMMITS LLC d/b/a SKYTOP STRATEGIES and CHRISTOPHER SKROUPA,<br><br>Defendants. | Civil Action No.: 1:20-cv-05978 (NGG) (CLP)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br><br>ORAL ARGUMENT REQUESTED |

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and Fed. R. Civ. P. 9(b), the Defendants Inspire Summits LLC d/b/a Skytop Strategies ("Skytop") and Christopher Skroupa ("Skroupa") (together, "Defendants"), by and through their undersigned counsel, hereby submit this Reply Memorandum of Law in Further Support of their Motion to Dismiss.

## ARGUMENT

There is only one live issue for the Court to decide on this Motion. As Plaintiffs argue in their opposition brief, Defendants acknowledge that the Plaintiffs were "employees" and Defendant Skytop was an "employer" and "enterprise" for purposes of the FLSA, and did not argue otherwise in their opening brief. Rather, Defendants argued that each of the Plaintiffs in this action was subject to the "administrative employee" exemption or the "computer employee" exemption. MTD MOL at p. 6-8. In their opposition, Plaintiffs take the absurd position that an otherwise indisputably exempt employee instantly becomes non-exempt the moment the employer misses a single paycheck – in other words, the FLSA does not apply at all until the moment that an employer not subject to it fails to pay an employee not protected by it.

### *The Salary-Basis Test Is Firmly Established By Plaintiffs' Own Allegations*

This argument, if accepted, would swallow the "salary basis test" whole, rendering it a nullity. In virtually every single FLSA case, including this one, the Plaintiff is alleging – must allege – some failure to pay the employee, either for base pay or overtime. As such, if the mere failure to miss one paycheck to an otherwise clearly exempt highly-paid salaried employee were sufficient to defeat the "salary basis" FLSA exemption, it would for all practical purposes write that exemption out of the statutory and regulatory scheme. The flawed circularity of this argument has been recognized and rejected by the Second Circuit and more than a dozen New York District Courts, who have uniformly held that it is the "objective intent" to pay on a salary basis that governs. *See, Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 521 (S.D.N.Y. 2013) ("The overarching inquiry is whether the employer's practices reflect an 'objective intention to pay its employees on a salaried basis.'") (citing *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir.2000)); *see also, Thomas v. Bed Bath & Beyond Inc.*, 961 F.3d 598, 609 (2d Cir. 2020) (citing *Yourman* with approval) (reiterating standard of employer intent, in the face of allegedly improper failures to pay the agreed-upon salary).

Under applicable Second Circuit precedent and countless cases in the New York District Courts, an employee is paid on a "salary basis" if the employer has an "objective intent" to pay them on a regular basis, not subject to deductions for working less then forty hours and the like. While Plaintiffs argue that certain 2004 amendments to Department of Labor regulations somehow render *Yourman* no longer binding on the District Courts in the Second Circuit, not a single New York District court has agreed with them, and instead there is an unbroken string of precedent repeatedly upholding *Yourman's* "objective intent" test. Moreover, even the

2

Department of Labor has explained the 2004 amendments in a manner wholly consistent with *Yourman*, and equally inconsistent with Plaintiffs' position.

For example, in 2016 in the Southern District of New York, the court followed *Yourman* and held that the relevant FLSA exemption is not lost because of specific acts of non-payment, and instead held that the "[t]he object of the inquiry is to determine 'whether the employer's practices reflect an objective intention to pay its employees on a salaried basis.'" *Shafir v. Continuum Health Care Partners, Inc.*, No. 12-CV-5794 (KBF), 2016 WL 205435, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting and citing *Yourman*, 229 F.3d at 130). Similarly, in 2015, the court held that "[a]lthough Plaintiff worked on a salaried basis since at least October 2012, she alleges only that her salary was improperly reduced for one pay period. That one-time reduction does not give rise to the inference that PRC did not intend to pay Plaintiff on a salary basis for the entire time she was employed as a compliance manager." *Quinones v. PRC Mgmt. Co. LLC*, No. 14-CV-9064 VEC, 2015 WL 4095263, at *4 (S.D.N.Y. July 7, 2015). And again, in 2008, the court noted that "[c]ourts apply the salary basis test to distinguish bona fide white collar employees from non-exempt, hourly employees, 'i.e., employees who may be disciplined by piecemeal deductions from . . . pay' (citing *Yourman* at 130), pointed out that "[a]n employee is paid on a salary basis if the employee receives 'a predetermined amount' each pay period that is 'not subject to reduction because of variations in the quality or quantity of the work performed' (citing 29 C.F.R. § 541.602(a)), and held that the fact that the employer has failed to make an agreed upon salary payment "is insufficient by itself, however, to find an employee non-exempt," and, citing *Yourman*, that the relevant inquiry is the objective intent of the employer. *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 456 (S.D.N.Y. 2008).

District Courts in the Eastern District have come to the same conclusion. *See, e.g., Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 60–61 (E.D.N.Y. 2011) ("The phrase 'salary basis' is a term of art as defined in the FLSA regulations. See 29 C.F.R. § 541.602. Its inclusion in a regulation applicable to the FLSA exemption for bona fide executive, administrative and professional employees is consistent with '[t]he purpose of the salary basis test . . . to distinguish 'true' executive, administrative, or professional employees from non-exempt employees, i.e., employees who may be disciplined 'by piecemeal deductions from . . . pay.' " *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir.2000) (*quoting Auer*, 519 U.S. at 456, 117 S.Ct. 905, 137 L.Ed.2d 79) (alteration in original). As the DOL explained in its discussion of the final regulations, the decision to include a salary basis component to the total annual compensation threshold of $100,000 was intentional because 'the salary basis requirement is a valuable and easily applied criterion that is the hallmark of exempt status.'" DOL Final Rules, 69 Fed.Reg. at 22,175."). Defendants' research has not uncovered a single case from any New York District Court has ever questioned the legitimacy of *Yourman*, and in fact every such court has followed it, as they must. As these cases make clear, the focus of the inquiry is not whether non-payment has occurred, but rather whether the employee could be and was "docked" for certain infractions, or for leaving early for a day, or could otherwise see their pay reduced on a piecemeal basis for any given pay period due to a fixed and regularly exercised company policy.

The United States Department of Labor explains and interprets its own regulations consistent with the standard set forth in *Yourman*, and in fact cites *Yourman* in its commentary on the 2004 changes Plaintiffs misinterpret. As Plaintiffs correctly quote, the most prominent and most frequently quoted "salary basis" regulation states that:

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* 29 C.F.R. § 541.602 (emphasis added).

The very next section explains that the focus of the courts in this Circuit has properly been on the objective intent of the employer, with an eye toward ferreting out sham salary schemes – whether, notwithstanding an employee's purported "salary," they are subject to the same reductions in pay experienced by hourly employees, who only get paid for each hour that they work:

> An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer *did not intend* to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer *did not intend* to pay employees on a salary basis. 29 C.F.R. § 541.603 (emphases added).

One court in this District took pains to analyze the above two regulations and the Department of Labor process that led up to the 2004 changes that Plaintiffs reference, and the Department of Labor commentary that in fact cites and relies on *Yourman*. In *Stein v. Guardsmark, LLC*, No. 12 CIV. 4739 JPO, 2013 WL 3809463, at *6 (S.D.N.Y. July 23, 2013), the court explained that "the Secretary of Labor noted in a statement accompanying promulgation of the current version of [Rule 541.603] that '[w]e have modified the first two sentences of subsection (a) to better clarify that the effect of improper deductions depends upon whether the facts demonstrate that the employer *intended to pay* employees on a salary basis, and to substitute the phrase 'actual practice' of making improper deductions for the 'pattern and practice' language in proposed subsection (a).' The Secretary of Labor referred in this statement to the Second Circuit's opinion in *Yourman v. Giuliani*, 229 F.3d 124 (2d Cir.2000), which explained that 'in determining what constitutes an 'actual practice' of pay deductions, we bear in

5

mind the object of the inquiry: whether the employer's practices reflect an *'objective intention'* to pay its employees on a salaried basis,' *id.* at 130.  It is also relevant that courts have looked skeptically on single-incident docking of pay as proof that an employer did not intend to pay an employee on a salary basis." (emphases added) (*citing, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed.Reg. 22122–01 (2004)).

### *Plaintiffs' Own Opposition Brief*
### *Acknowledges and Cites the "Objective Intent" Standard*

In Section II. of Plaintiffs' Opposition Brief, Plaintiffs themselves cite cases that uniformly apply the "objective intent" standard to the "salary basis" test, and every single case they cite concludes that the salary basis test has been met, holds that an FLSA exemption therefore applies, and then dismisses the respective plaintiffs' FLSA claims.  Consistent with Defendants' arguments in their opening brief and above, the main point of the "salary basis" test and the "objective intent" standard is to distinguish between true highly-paid and salaried white-collar jobs, which are properly exempt, and sham efforts by employers to misclassify lower level hourly employees as exempt by purporting to pay them a salary while still retaining and exercising the right to pay those employees only for each hour of work they perform, and even that subject to other deductions.  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 456 (S.D.N.Y. 2008) ("Courts apply the salary basis test to distinguish bona fide white collar employees from non-exempt, hourly employees, "i.e., employees who may be disciplined 'by piecemeal deductions from . . . pay.") (cited by Plaintiffs at page 12 of their opposition brief).

In addition to and consistent with *Torres*, every "salary basis" case Plaintiffs cite applies the objective intent standard and holds that a failure to pay according to the parties' agreement does not negate the otherwise indisputable satisfaction of the "salary basis" test.  *See, Anani v.*

6

*CVS RX Servs., Inc.*, 788 F. Supp. 2d 62, 65 (E.D.N.Y. 2011) (despite allegations of failure to pay the agreed-upon amount, court holds that exemption applies) (cited by Plaintiffs at page 11); *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 165 (2d Cir. 2008) (same) (cited by Plaintiffs at page 11); *Ahern v. Cty. of Nassau*, 118 F.3d 118, 122 (2d Cir. 1997) (same) (cited by Plaintiffs at page 11); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 456 (S.D.N.Y. 2008) (same) (cited by Plaintiffs at page 12); *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 529–30 (E.D.N.Y. 2015) (same) (cited by Plaintiffs at page 12).

In fact, Plaintiffs even cite and rely on *Yourman*, discussed at length above, and explicitly cite and discuss the "objective intent" test laid out in Yourman and applied without exception by all New York District Courts ever since. PL Opp. MOL at p. 11-12. Every single case Plaintiffs cite comes out in favor of the respective defendants and the application of FLSA exemptions, and the Court should reach the same result here.

### *Plaintiffs' Own Allegations Show That There Are No "Deductions" At Issue Here*

In addition to the fact that every case cited by Plaintiffs resulted in dismissal under one FLSA exemption or another, the bulk of them involved allegedly improper "deductions" from the employees' pay, and whether such "deductions" undermined the otherwise satisfied "salary basis" test. Here, however, there were no "deductions" from any Plaintiffs' pay. The Plaintiffs do not allege that Skytop "docked" their pay or otherwise claimed any right to withhold any portion of any Plaintiffs' agreed-upon salary. Instead, each and every Plaintiff affirmatively alleges that Skytop acknowledged, in writing, that Skytop owed each Plaintiff their full salary an that Skytop would pay it. For example, Plaintiff Barone alleges that her Skytop "termination letter acknowledged that Barone was owed funds and advised that Defendants would revert with Barone's final paycheck." CPLT ¶41. Thereafter, each other Plaintiff makes the same

7

allegation. CPLT ¶57 (Carney), ¶71 (Johanning), ¶83 (Reich), ¶92 (Ali). As such, all of the cases that Plaintiffs cite are largely inapposite, as this case does not involve any deductions or reductions in pay, but rather nothing more than an employer that suffered catastrophic revenue and cash-flow problems due to the pandemic and was therefore unable to meet – but openly acknowledged – its payroll obligations to these Plaintiffs. CPLT ¶40 ("due to the COVID-19 (coronavirus) pandemic, it has become necessary to reduce [Skytop's] workforce.").

The Plaintiffs here are all clearly exempt employees under the administrative and computer employee exemptions, and their FLSA claims must be rejected as an improper attempt by highly-paid and salaried white collar employees to take advantage of a remedial statute designed to protect workers with less bargaining power who have historically been abused by overreaching employers. As the Court already noted at the pre-motion conference, this is a straightforward state law case that should not be clogging up this Court's docket, and it should be dismissed. *See, Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1362 (11th Cir. 1997) (Nicholson and Smith claim that because they never received a dime, they cannot be administrative employees, and, therefore, the bar to their relying on the FLSA drops away. This is an unusual interpretation of the FLSA, one that would convert an entire category of state contract law actions into federal labor suits. Because Congress did not intend such a result for well-compensated, highly responsible positions, we reject the proffered interpretation.").

## CONCLUSION

As the cases above show, *Yourman* is not only still controlling law in this Circuit, but has been cited and adopted by the United States Department of Labor *when promulgating the very 2004 regulations on which Plaintiffs attempt to rely*. It should and must control here, and Plaintiffs cannot be allowed to convert their state law breach of contract claims into federal law

8

FLSA claims under statutes and regulations from which their employment with Skytop was exempt. Plaintiffs' federal claims must be dismissed, and the Court should thereafter decline to exercise supplemental jurisdiction[1] over Plaintiffs' remaining state law claims.

Dated: New York, New York
January 19, 2022

                                            **THE ENGEL LAW GROUP, PLLC**

By: _____
         Adam E. Engel
280 Madison Avenue – Suite 705
New York, NY  10016
(212) 665-8095
aee@elgpllc.com
*Counsel for Defendants Inspire Summits and Christopher Skroupa*

TO: All Counsel of Record by ECF

---

[1] Plaintiffs are correct that the question is not one of this Court's original subject matter jurisdiction, and Defendants' reference to Rule 12(b)(1) in their opening brief (p.2) is hereby withdrawn. Rather, the Defendants request that the Court decline to exercise its discretionary supplemental jurisdiction over remaining state law claims given that this case is at an early stage and that to do otherwise would allow Plaintiffs to manufacture federal court jurisdiction where none properly exists.